Statement of Facts.

# C. LOCKHART ET AL. v. CRAIG ST. RY. CO. ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Submitted November 10, 1890—Decided January 5, 1891.

On a bill filed by abutting owners against a street-railway company, incorporated under the act of May 14, 1889, P. L. 211, to enjoin the construction and operation of an electric railway on a city street, newly paved with asphalt at the expense of the owners, averring that said construction and operation would impose an additional burden for which compensation was not provided for by said act, and that the said act was therefore unconstitutional, a *preliminary* injunction prayed for was refused : Affirmed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 175 October Term 1890, Sup. Ct.; court below, No. 59 September Term 1890, C. P. No. 1, in Equity.

On June 14, 1890, Charles Lockhart and twenty-seven others filed a bill in equity against the Craig Street Railway Company and the Duquesne Traction Company, averring in substance as follows :

That the plaintiffs were severally property owners abutting upon Negley Avenue, in the city of Pittsburgh ; that said avenue was an improved street of said city, paved within the last year with a smooth asphalt pavement, paid for by plaintiffs and other abutting property owners at a cost of some $132,000 ; that the same was paved with the said asphalt pavement with a view and for the purpose of diminishing the noises and annoyances arising from travel on the same, and to increase the value of their lands on said street as places of residence, and that the result had been to greatly increase the value of said lands.

That the Craig Street Railway Co. claimed to have the right to enter upon and construct a street railway along and upon said Negley Avenue, from the intersection thereof with Roup street to the intersection thereof with Bryant street, and then

to return with a double track on Negley Avenue to said intersection with Roup street.

That said Craig Street Railway Co. threatened and proposed to at once enter upon Negley Avenue to construct, maintain and operate a street railway with two tracks, etc., and to run thereon cars propelled by electricity as a motive power, and for that purpose to tear up and destroy said pavement, to replace the same with an inferior block pavement, to erect, along the lines of said street on the properties of plaintiffs, a line of poles on each side of said street, to suspend wires from said poles across the carriage way of said street, and upon such poles to suspend a wire over each of its tracks running lengthwise of said street.

. That such poles would be located in such position as defendants might select, at the height of about eighteen feet and about seventy-five feet apart; that the tracks to be laid would be about seven feet from the curb line, and that said pole and tracks would be a continuous trespass upon said properties and a serious obstruction to the passage of said street; that they would deprive said plaintiffs of easy and convenient access to the street from their properties, and prevent the use of their respective properties under the surface of said street, etc.

That the running of cars along said tracks by the use of electricity would deprive plaintiffs of the quiet which they had theretofore enjoyed, and which made their properties especially valuable for purposes of residence, and would greatly damage and depreciate the value of the same.

That the Duquesne Traction Co. had made or was about to make an agreement or lease of some kind for the construction and operation of said passenger railway, and the city councils had pretended to give by ordinance, the right to enter upon said Negley Avenue, and to make and construct thereon such motors, cables, electrical and other appliances and necessary and convenient mechanical fixtures as said company might at any time select, and also to lease the property, rights and franchises of said Craig Street Railway Co., and to construct and operate the railway of said company.

That a certain other corporation, named the Negley Avenue & Roup Street Railway Co., had been incorporated to lay a street railway along Negley Avenue between the streets aforesaid,

Opinion of Court below.

and that its charter existed before and at the date of the incorporation of said defendant companies.

That the act, under which the Craig Street Railway Co. was incorporated, forbids the construction of any railway incorporated thereunder within the limits of any city, etc., without the consent of the local authorities thereof; that the city of Pittsburgh had no power to assent to or authorize any person or corporation to enter upon, use, or occupy said street, except such consent or authority be expressed by general ordinance, and that the said defendants did not possess the authority of the city expressed by general ordinance.

That the act of May 14, 1889, under which the Craig Street Railway Co. was incorporated, was unconstitutional in that it did not provide a method or remedy whereby plaintiffs might compel defendants to secure compensation to them in advance; and, also, that the act of March 22, 1887, P. L. 9, under which the Duquesne Traction Co. was incorporated did not empower it to take property of plaintiffs to its use, or, if it did, then that it was unconstitutional; and finally, that neither of said defendants had any right or power by virtue of a charter to construct and maintain a street railway over Negley Avenue in manner threatened by them.

Upon the averments of the bill, the plaintiffs prayed for decrees:

1. " That the said defendants, or either of them, have no lawful power to enter in and upon said Negley Avenue, and thereon to lay down, construct and operate its said railway.

2. " That the defendants, by preliminary injunction, hereafter to be made final, be restrained and enjoined from entering upon, laying down, constructing, maintaining or operating a street railway upon said avenue, between the points mentioned in the bill."

3. For further relief.

On June 28, 1890, fixed for the hearing of plaintiff's motion for a preliminary injunction, the defendant companies filed an answer, and affidavits were read on both sides. After argument of the motion, the court, on September 3, 1890, filed the following opinion, STOWE, P. J.:

The questions raised by the bill, answer and affidavits, are

Opinion of Court below.

all merged in one inquiry, to wit: Have the defendants, or either of them, shown the legal right to construct, operate and maintain a railway on Negley Avenue, as proposed by them? This involves the proper interpretation of defendants' charters, the constitutionality of the acts under which they were granted, and the validity of the ordinances of the city of Pittsburgh, granting them the right to build and operate the road in question.

It cannot be doubted, at this day, that the legislature of Pennsylvania has the power to authorize the incorporation of companies with power to build and operate railways with horses over the streets of cities, with the authority and consent of the authorities of said cities, as provided by § 9, article XVII. of the constitution. And it is too late to say that such use and occupation of the streets impose such an additional burden or servitude thereon, as renders it necessary to provide for compensation therefor to the owners of abutting property. Nor can it be successfully urged that the proper municipal authorities may not, at their discretion, repair, improve and change the pavement put down by the city, whenever it may be done without any additional cost or expense to the city or property owners, so far at least as it may be of any usual and ordinary character.

The power over the streets vested in the city authorities seems to be absolute, so far as its exercise is not inconsistent with their ordinary use, and does not take, injure or destroy the property of adjoining owners. Therefore, I do not think the fact that the plaintiffs secured the paving of a street from the city, for which they paid in the ordinary way by assessment, took away any right the city had to repair or change the pavement, or grade of the street, or to exercise over it the same power it has over any other street or alley in the city.

There can be no doubt that, under a proper charter, the city had a right to allow the streets to be used for a street railway, with horses as a motive power. So far as the street use proper is concerned, there is no substantial difference between the tracks of such a street railway and one operated by electricity. We may then assume that, in the occupation of the street with tracks, intermediate paving, and the appliances in ordinary use for railway operated by horses, there is nothing of which

Opinion of Court below.

plaintiffs can legally complain. Whatever dust, noise and annoyance is incident they must submit to.

But, there is a material and substantial difference between such a road and the one contemplated by defendants as regards its relations to plaintiffs' property. The proposed road, not only occupies the middle portion of the street or cart way, but will, as a necessary part of its machinery, have iron posts some eighteen feet high, permanently fixed three or four feet in the ground, along or near the curb of the pavement or sidewalk, upon which will also be placed permanent lines of wire crossing the street, and upon which will also be placed a permanent wire over each track running longitudinally with the street. Do these singly or altogether amount to such a taking of plaintiff's property, as is prohibited by the constitution without compensation?

The placing of the wires over the streets does not appear to be a taking of plaintiffs' property. The streets are dedicated to the public use, and a citizen has certain special rights, as an abutting owner, but I cannot see how a wire run through the air above the streets can be said to be a taking, injury, or a destroying of his property. But another question arises in reference to the posts placed in the ground for the support of the wires by means of which the cars are moved. It has generally been understood in Pennsylvania, that the abutting owner has a fee to the middle of the adjoining street, and that the public has only a right of passage over it: Chambers v. Furry, 1 Y. 167; Lewis v. Jones, 1 Pa. 336.* But this must not be taken in its literal sense, especially in towns and cities. What might be considered an invasion of private right, so far as the use of a highway is concerned, in the country, might not be so in a city. Thus, a city by virtue of its general authority, may build sewers in streets, and the adjoining proprietor is not entitled to have damages assessed as for a new use or servitude: Fisher v. Harrisburg, 2 Gr. 291; Cone v. Hartford, 28 Conn. 363; Traphagen v. Jersey City, 29 N. J. Eq. 206; Michener v. Philadelphia, 118 Pa. 535. In such case, the street is not only used without compensation to the adjoining owner, but he is compelled to pay for the use of the sewer.

---

* See Livingston v. Wolf, 136 Pa. 519.

Opinion of Court below.

So, the right to lay down gas pipes in the streets, given by the legislature to municipal authorities, without allowing compensation, has been recognized by the courts, and, while it has not been expressly ruled in Pennsylvania that I know of, Mr. Justice STERRETT, in Sterling's App., 111 Pa. 41, while deciding that a gas line was an additional burden which entitled the owner to damages in the country, said: "As to the streets and alleys in cities and boroughs, there are reasons why a different rule, to some extent, should prevail." Such has been taken to be the law in cities by common consent. I do not think that any one ever heard of a suit in Pennsylvania to recover damages for injury done merely by running a gas pipe along the street in front of his premises under municipal authority. So with water pipes, awning posts, fire plugs, and lamp posts. These all more or less impinge upon the absolute right of an owner of the soil, and are not necessary to accommodate public travel, or even consistent with the public right to an unobstructed passage way. And it may be now taken as settled that the owner's rights as to abutting property are subject to the paramount right of the public, and the rights of the public are not limited to a mere right of way, but extend to all beneficial legitimate street uses, such as the public may from time to time require.

The use of the streets for sewers, tunneling, public cisterns, gas pipes, water pipes, and other improvements necessary for the comfort and convenience of the citizens of cities and towns, so long as they do not substantially interfere with the use of the streets as such, appear to be under legislative and municipal control: Dillon on Mun. Corp., § 699. The case of Taggert v. The Newport Railway Co., decided this year by the Supreme Court of Rhode Island, is directly in point, and if good law, covers the case in hand. My own impression is that the use of poles, wires and other necessary appliances, such as are proposed to be used by defendants, is not in any respect a greater interference with the ownership of the adjoining property owner on a street, than the use of streets for fire plugs, horse troughs, and lamp posts, which have long and generally been recognized as within the power and control of the city government.

Recognizing the right of the legislature and city authorities to authorize the building of railways upon the streets of a city,

without compensation to property owners, because it is a means of public transportation and accommodation, the necessary and proper apparatus for moving them must be allowed to follow as an incident, unless there is something illegal in its construction or use. The proposed construction here is no more illegal by reason of its effects upon the owners of property, so far as actual interference with their rights to use the streets is concerned, than so many lamp posts, and, if compensation could not be compelled for the ground taken by them, neither should it be for the posts supporting the wires in this case.

Thus far, I have assumed that the charters of the defendants gave the right to defendants to exercise their powers to construct, maintain and operate a street railway on Negley Avenue. But plaintiffs' counsel lay great stress upon the point that, under the acts of assembly cited, defendants have no right to build and operate a road, because no power is conferred thereby to do so. His argument is that no such power is expressly given by the act of 1889, and cannot be implied. But with this I am unable to concur.

The act of May 14, 1889, is entitled "An act for the incorporation and government of street railways in this commonwealth," and provides "that any number of persons, not less than five, may form a company for the purpose of constructing, maintaining and operating a street railway on any street or highway upon which no track is laid, or authorized to be laid, . . . . . with the privilege of occupying so much of any street, used or authorized to be used, under any existing charters, as is hereinafter provided, for public use in the conveyance of passengers by any other power than by locomotive." This, leaving out restricting matter of location, would read: "A company may be formed for the purpose of constructing, etc., a street railway for public use in the conveyance of passengers by any other power than by locomotive." The method of forming such company is then provided for, and when incorporated it was to have the power and privilege of succession, sue and be sued, make and use a seal, and hold real and personal estate. Section fifteen provides that "no street-passenger railway shall be constructed by any company incorporated under this act within the limits of any city . . . . . without the con-

sent of the local authorities," etc. Section sixteen requires the construction, etc., to be commenced within one year after the consent of the proper local authorities, etc.

It is true that the act does not say the corporation shall have the right to build, maintain and operate a railroad, but it does say that a company may be formed, under the provisions of the act, for that purpose ; and, to suppose the legislature authorized a company to be formed for a specific purpose, and then say that when formed it had no power to carry out the purposes of its creation, because they did not declare in so many words, that they should have the power to do the very purpose for which it was created, is a refinement of interpretation I do not think warranted by either reason or authority.

To my mind, the power in the Craig Street Railway Co., to construct and maintain a railroad, on compliance with the terms of the act under which it was incorporated, is clear, and that these defendants have shown a legal right to proceed and construct the railway contemplated by them, unless the failure to provide means by which the plaintiff may have such damages as they may sustain, assessed and paid, or secured in advance, renders the act unconstitutional. Upon this question I am not free from doubt, but the decided inclination of my mind is that the act is not unconstitutional for that reason, because the uses of the streets for the purpose of applying motive power in the manner proposed, is not such a new use as in cities should be treated as outside the proper purpose for which streets will be held to have been originally dedicated to the public use. Taggert v. Newport Railway Co., before cited, is exactly in point.

The case presented by plaintiffs is certainly not so clear from doubt that a chancellor should grant an injunction, summarily stopping a great public improvement, before final hearing, more particularly, if the position taken by plaintiffs is correct and defendants have no legal right to take possession of the streets as they are about to do. A common-law action will compel them to pay all damages arising to plaintiffs, and thereafter equity would probably afford a complete remedy by which the wrong done them could be fully corrected.

The injunction prayed for is refused.

—Thereupon the plaintiffs took this appeal, assigning the order refusing a preliminary injunction, for error.

Arguments.

*Mr. E. Y. Breck, Mr. Jas. F. Robb, Mr. W. W. Thompson* and *Mr. Johns McCleave*, for the appellants.

In the brief filed, counsel cited: (1) Section 8, article XVI. of the constitution; §§ 14, 17, act of May 14, 1889, P. L. 211; New Brighton Bor. v. Church, 96 Pa. 331; Chester Co. v. Brower, 117 Pa. 647; Pittsburgh v. Scott, 1 Pa. 314; Sharett's Road, 8 Pa. 91; Commonwealth v. Railroad Co. , 58 Pa. 50; Yost's Report, 17 Pa. 524; Connecticut River R. Co. v. Commissioners, 127 Mass. 50; Lebanon School D. v. Seminary, 22 W. N. 65; Strasburg Bor. v. Bachman, 21 W. N. 462; McClinton v. Railway Co., 66 Pa. 404; Curwensville Bor.'s App., 129 Pa. 74; Sterling's App., 111 Pa. 41; Pierce v. Drew, 136 Mass. 83; Fries v. R. & M. Co., 85 Pa. 73; Hoffman's App., 118 Pa. 512. (2) Philadelphia & T. R. Co., 6 Wh. 35; Commonwealth v. Railroad Co., 27 Pa. 355; Frost v. Cherry, 122 Pa. 417; Pierce v. Drew, 136 Mass. 85; Sterling's App., 111 Pa. 41; Penna. R. Co.'s App., 115 Pa. 529; Chamberlain v. Cordage Co., 41 N. J. Eq. 43; Leeds v. Richmond, 102 Ind. 372; Grand Rapids Booming Co. v. Jarvis, 30 Mich. 308; Perry v. Wilson, 7 Mass. 393; Thatcher v. Dartmouth, 18 Pick. 501; Chaffee's App., 56 Mich. 244; People v. Rochester City, 50 N. Y. 525. (3) Diligent Fire Co. v. Commonwealth, 75 Pa. 295; Wolf v. Goddard, 9 W. 550; Penna. R. Co. v. Canal Com., 21 Pa. 9. (4) Covington Ry. Co. v. Covington, 9 Bush. 127; Davis v. New York, 14 N. Y. 506; People v. Kerr, 27 N. Y. 188; Milhau v. Sharp, 27 N. Y. 611 (84 Am. Dec. 314); Stanley v. Davenport, 54 Ia. 463 (37 Am. Rep. 216); Davis v. Railway Co., 114 Pa. 312; New Brighton etc. R. Co.'s App., 105 Pa. 13.

*Mr. John M. Kennedy, Mr. W. A. Stone, Mr. S. A. McClung, Mr. Charles H. McKee* and *Mr. D. T. Watson*, for the appellees.

In the brief filed, counsel cited: (1) Linton v. Bridge Co., 1 Gr. 415. (2) Philadelphia v. Railway Co., 3 Brewst. 547; Faust v. Railway Co., 3 Phila. 164; Clark v. Railroad Co., 3 Phila. 259; Mills on Eminent Domain, § 205; Angell & D. on Highways, § 91. Newell v. Railway Co., 35 Minn. 112 (59 Am. Rep. 303); Attorney General v. Railroad Co., 125 Mass. 515; Citizens Coach Co. v. Camden R. Co., 33 N. J. Eq. 267

(36 Am. Rep. 542); Elliott v. Railway Co., 32 Conn. 579.
(3) Philadelphia & T. R. Co., 6 Wh. 25; Commonwealth v.
Railroad Co., 27 Pa. 354; Southwark R. Co. v. Philadelphia,
47 Pa. 314; Danville R. Co. v. Commonwealth, 73 Pa. 29;
Snyder v. Railroad Co., 55 Pa. 340; O'Connor v. Pittsburgh,
18 Pa. 187; Pittsb. etc. R. Co. v. Rose, 74 Pa. 367. (4) Mil-
hau v. Sharp, 15 Barb. 210; Fisher v. Harrisburg, 2 Gr. 291;
Barter v. Commonwealth, 3 P. & W. 253; Pierce v. Drew,
136 Mass. 75; Weller v. McCormick, 2 East. R. 676; Smith
v. Simmons, 103 Pa. 32; Dillon on Mun. Corp., § 732; Tele-
graph Co. v. Rich, 19 Kas. 517; Williams v. Railway Co., 41
Fed. R. 556; Roahe v. Telephone Co., 41 N. J. Eq. 35.
(5) Duncan v. Railway Co., 94 Pa. 435; Penna. R. Co. v.
Duncan, 111 Pa. 352; Chester Co. v. Brower, 117 Pa. 647;
Delaware Co.'s App., 119 Pa. 159; O'Brien v. Railroad Co.,
119 Pa. 191. (6) Sparhawk v. Railway Co., 54 Pa. 401.
(7) Powell v. Commonwealth, 114 Pa. 265. (8) Kishacoquil-
las Co. v. McConaby, 16 S. & R. 145; West. Penna. R. Co.'s
App., 104 Pa. 407; Irvine v. Lumbermen's Bank, 2 W. & S.
203; Dyer v. Walker, 40 Pa. 160; Cochran v. Arnold, 58 Pa.
403; Freeland v. Insurance Co., 94 Pa. 513; Cleveland etc.
R. Co. v. Speer, 56 Pa. 334; Mowday v. Moore, 133 Pa. 602;
New Castle v. Raney, 130 Pa. 546; Pittsb. etc. R. Co. v. Jones,
111 Pa. 204; United States v. Moore, 95 U. S. 763; Larimer
Ry. Co. v. Railway Co., 137 Pa. 533.

PER CURIAM:

The decree is affirmed and the appeal dismissed, at the costs
of the appellants.

Decree affirmed.