## KIRBY v. CITIZENS' TEL. CO. OF SIOUX FALLS.

1. Const. art. 6, § 13, providing that private property shall not be taken or damaged for public use without just compensation, and that the fee of land taken for highways, shall remain in the owner, and article 17, § 18, providing that compensation shall be made before property is taken or injured, do not apply to the use of the streets of a city for the purposes for which they have been dedicated.

2. Under the direct provisions of Laws 1885, p. 208, c. 141, § 3 (Rev. Civ. Code 1903, § 554), a city may permit a telephone company to erect poles and maintain a telephone system on its streets.

3. The construction, maintenance, and operation of a telephone system on the streets of a city in such a manner as not to cause unnecessary injury or inconvenience to property owners is not an additional servitude for which an abutting owner is entitled to compensation.

(Opinion filed November 11, 1903.)

Appeal from circuit court, Minnehaha county. Hon. JOSEPH W. JONES, Judge.

Action by Joe Kirby against the Citizens' Telephone Company of Sioux Falls for an injunction. From an order vacating a preliminary injunction, plaintiff appeals. Affirmed.

*Joe Kirby*, for appellant.

The use of the street for telephone poles is not a street use proper, and is a new burden or servitude thereon, inconsistent with the use of the street for travel. Donovan v. Allert 91 N. W. 441. The city possesses only such power as is expressly conferred upon it, or necessary, not merely convenient, for the exercise of such express power. Sioux Falls v. Kirby 6 S. D. 62.

*Aikens & Judge*, for respondent.

A city incorporated under the general laws of this state has the right to grant a telephone franchise of its streets.

Cities may grant telephone companies the right to erect their poles on and string their wires over lawns and grass plats located at the side of streets.   Joyce on Electric Law, Sec. 395; So. Bell. Teleph. and Teleg. Co. v. Constantine, 69 Fed. Rep. 61; Same v. Francis, 10 So. Rep. 1, 55 Am. St. Rep. 930; Post. Teleg. Cable Co. v. Brantley, 18 So. Rep. 321; Dodd v. Consolidated Traction Co., 5 Am. Elec. Cas. 201.

The use of the street for telephone purposes does not create an additional burden or servitude upon the easement created by the original grant or dedication.   Board of Trade Tel. Co. v. Barnett, 107 Ill. 507; Postal Teleg. Cable Co. v. Eaton, 170 Ill. 513; East Tenn. Teleg. Co. v. Russelville, 51 S. W. Rep. 308; Chesapeake & Potomac Teleph. Co. v. McKenzie, 74 Md. 36; Magee v. Overshiner, 150 Ind. 127; Pierce v. Grew, 136 Mass. 709; People v. Eaton, 100 Mich. 208; Coker v. N. W. Teleph. Ex. Co., 60 Minn, 539; Julia Bld. Assn. v. Bell Teleph. Co., 88 Mo. 258; Hershfield v. Rocky Mountain Teleph. Co., 12 Mont. 102; Johnson v. N. Y. & P. Teleph. & Teleg. Co., 78 N. Y. 598.

CORSON, J.   This is an appeal from an order dissolving a temporary injunction, and the question presented for our consideration is, does the erection of a telephone system in the streets of a city constitute an additional servitude, not imposed by the original appropriation, dedication or condemnation of the streets for public use, for which the abutting property owners are entitled to compensation?   It is alleged in the plaintiff's complaint and admitted by the answer that the plaintiff is the owner of two lots fronting on Duluth avenue, in the city of Sioux Falls, on which he resides, and that be-

tween the sidewalk fronting said premises and the curb line he has improved the ground by planting shade trees and shrubs thereon, and by converting the same into a grass plat or lawn, under the ordinance adopted by the city council of the said city. It is further alleged that the defendant, at the time of the filing of the plaintiff's complaint and the issuance of the temporary injunction, was proceeding to erect telephone poles and construct its telephone system along the said street, and was proceeding to erect a telephone pole within the plat so improved by plaintiff as aforesaid, thereby damaging the property of the plaintiff, rendering it less valuable and desirable as residence property, without making or tendering to the plaintiff any compensation for the damages sustained by him.

It seems to be conceded that the defendant was authorized by an ordinance of the common council of the said city, if the city was authorized to adopt such an ordinance, to construct, maintain and operate a telephone line along the streets of that city. It is contended by the appellant that under the constitution of this state it was not competent for the authorities of the city to grant to the defendant the right to erect poles and construct and maintain a telephone system along the streets of that city, and that, if it had authority to grant such right the defendant could not erect the same without making compensation to the abutting property owners for the damages they might sustain by reason of the construction of such telephone system. Section 13, Art. 6, of the state Constitution reads as follows: "Private property shall not be taken for public use, or damaged without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken. No benefit which may accrue to the

owner as the result of an improvement made by any private corporation shall be considered in fixing the compensation for property taken or damaged. · The fee of land taken for railroad tracks or other highways shall remain in such owners, subject to the use for which it is taken." Section 18, Art. 17, provides that compensation shall be made before any property "is taken, injured or destroyed." These provisions of the constitution do not apply to the use of the streets of a city for the purposes for which they were dedicated, appropriated or condemned. The authority of the city to grant to the defendant the right to erect, maintain, and operate a telephone system is clearly granted by the provisions of section 3, c. 141, p. 208, Laws 1885, now constituting section 554 of the Revised Civil Code of 1903, and which section reads as follows: "There is hereby granted to the owners of any telephone or telegraph lines operated in this state, the right of way over lands and real property belonging to the state, and the right to use public grounds, streets, alleys and highways in this state subject to control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or cross, and the place the poles to support the wires are located. * * *" This section seems to have remained in force since it was enacted in 1885.

Upon the main question that is presented for our determination the authorities are not in harmony, and any attempt to reconcile them would be useless. One line of authorities holds that the construction of telephone systems along the streets of cities imposes no additional servitude upon the abutting property owners, and that said owners are not entitled to compensation for any damages they may sustain by reason of the con-

struction of such system. The other line of authorities take the view that such a system creates or imposes upon the abutting property owners an additional servitude, for which they are entitled to compensation for such damages as they may sustain. After a carefel examination of these authorities, we have arrived at the conclusion that the decisions of the courts taking the former view are not only sustained by the greater weight of authority, but by the better reasoning, and should be followed. The streets of a city or incorporated town are, in contemplation of law, dedicated, appropriated, or condemned for all proper street uses; and, when a street is used for any proper street purpose by permission of the city authorities, such use does not constitute an additional servitude, though such use may not have been known when the streets were dedicated, appropriated, or condemned for street purposes, and the abutting fee owner is not entitled to compensation for any damages he may sustain by reason of such use. The streets of a city are now used for many purposes unknown in former times. A century ago or less there was practically no use of the streets for sewers, laying of water and gas pipes and operating street railways, but with the advance of civilization and the improved conditions of society these uses have become a necessity, and recognized by the courts, and quite generally held as not adding any new servitude to the abutting fee owner for which he is entitled to compensation. The telephone is but a step in advance of former methods of conveying intelligence and information, and is a substitute for the messenger and carrier of former times. In speaking upon the subject of street railways, Judge COOLEY, in his work on Constitutional Limitations, says: "When land is taken or dedicated for a

town street. it is unquestionably appropriated for all ordinary purposes of a town street; not merely the purposes to which such streets were formerly applied, but those demanded by new improvements and new wants. Among these purposes is the use for carriages which run on a grooved track; and the preparation of important streets in large cities for their use is not only a frequent necessity, which must be supposed to have been contemplated, but it is almost as much a matter of course as the grading and paving. '' Cooley's Con. Lim. § 556. With the advance in civilization and new discoveries in science and new inventions a more varied use of the streets of a city has become a necessity, and the rights of fee owners must yield to the public good, and the new uses and more appropriate methods must be deemed to have been compensated for in the appropriation, dedication, or condemnation of the steets.

In Pierce v. Drew. 136 Mass. 75, 49 Am. Rep. 7, the Supreme Court of that state, in speaking upon the subject, uses the following language; ''When land has been taken or granted for highways, it is so taken or granted for the passing and repassing of travelers thereon, whether on foot or horse-back, or with carriages and teams for the transportation and conveyance of passengers and property, and for the transmission of intelligence between the points connected thereby. As every such grant has for its object a procurement of an easement for the public, the incidental powers granted must be so construed as most effectually to secure to the public the full enjoyment of such easement. Commonwealth v. Temple, 14 Gray, 69, 77. * * * When the land was taken for a highway, that which was taken was not merely the privilege of traveling over it in the then known vehicles, or of using it in the

then known methods, for either the conveyance of property or transmission of intelligence. Although the horse railroad was deemed a new invention, it was held that a portion of the road might be set aside for it, and the rights of other travelers, to some extent, limited by those privileges necessary for its use. Commonwealth v. Temple supra; Attorney General Metropolitan Railroad, 125 Mass. 515, 28 Am. Rep. 264. The discovery of the telegraph developed a new and valuable mode of communicating intelligence. Its use is certainly similar to if not identical with, that public use of transmitting information for which the highway was originally taken, even if the means adopted are quite different from the post-boy or the mail coach. It is a newly discovered method of exercising the old public easement, and all appropriate methods must have been deemed to have been paid for when the road was laid out."

In Julia Building Association v. Bell Telephone Co, 88 Mo. 258, 57 Am. Rep. 398, the Supreme Court of Missouri, in an able and exhaustive opinion, arrives at the conclusion that the erection of a telephone system upon the streets of the city is not an additional servitude for which the abutting fee owners are entitled to damages, and that such use is but an improved method of transmitting intelligence, and a substitute for other well known methods. In that case the court says: "These streets are required by the public to promote trade and facilitate communications in the daily transaction of business between the citizens of one part of the city and those of another, as well as to accommodate the public at large in these respects. If a citizen living or doing business on one end of Sixth street wishes to communicate with a citizen living or doing business

on the other end, or at any intermediate point, he is entitled to the use of the street, either on foot, on horseback, or in a carriage or other vehicle, in bearing his message.    The defendants in this case propose to use the street by making the telephone poles and wires the messenger to bear such communications instantaneously, and with more dispatch than in any of the above methods, or in any other known method of bearing oral communications.   Not only would such communications be borne with more dispatch, but, to the extent of the number of communications daily transmitted by it, the street would be relieved of that number of footmen, horsemen, and carriages.   If a thousand messages were daily transmitted by means of telephone poles, wires, and other appliances used in telephoning, the street, through these means, would serve the same purpose, which would otherwise require its use either by a thousand footmen, horsemen or carriages to effectuate the same purpose.   In this view of it the erection of telephone poles and wires for transmission of oral messages, so far from imposing a new and additional servitude, would, to the extent of each message transmitted, relieve the street of a servitude or use by a footman, horseman or carriage." This case is directly in point, as the telephone company was proceeding to erect a telephone pole through the covering and into an excavation specially made by the fee owner in front of its premises.

In Cater v. Northwestern, etc., Co., 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 Am. St. Rep. 543, the Supreme Court of Minnesota says:   "The question, then, is, what is the nature and extent of the public easement in a highway?    If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising this ease-

17 S. D.—24

ment is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a footpath. In a slightly more advanced state it included the idea of a way for pack animals. * * * And thus the methods of using public highways expanded with the growth of civilization, until to-day our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired; but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those in use." In People v. Eaton, 100 Mich. 208. 59 N. W. 145, 24 L. R. A. 721, the Supreme Court of Michigan says; "When these lands were taken or granted for public highways, they were not taken or granted for such uses only as might then be expected to be made of them by the common method of travel then known, or for the transmission of intelligence by the only methods then in use, but for such methods as the improvement of the country or the discoveries of future times might demand. * * * It would be a calamity to the state if, in the development of the means of rapid travel, and the transmission of intelligence by telegraph or telephone communication, parties engaged in such enterprises were compelled to take condemnation proceedings before a

single track could be laid or a pole set." This view is also approved by the Supreme Court of Montana in Hershfield v. Rocky Mountain, etc., Co., 12 Mont. 102, 29 Pac. 883; by Castle v. Bell Tel. Co. (Sup.) 63 N. Y. Supp. 482; by Lockhart v. Railway Co. 139 Pa. 419, 21 Atl. 26; by Johnson v. N. Y. & P. Telephone & Telegraph Co. (Sup.) 78 N. Y. Supp. 598; by the Supreme Court of the District of Columbia in McCormick v. District of Columbia, 54 Am. Rep. 284; and by the Supreme Court of Indiana in Magee v. Overshiner, 150 Ind. 127, 49 N. E. 951, 40 L. R. A. 370, 65 Am. St. Rep. 358, which may be regarded as the leading case upon this side of the question. In that case there is a full review of the opposing decisions, and that learned court, as its conclusion, says: "The telephone is particularly useful in communications between the people within a city, and it can be used for that purpose directly, and by persons without special skill. It is merely clearly a substitute for the old methods of communication of messages between persons within the city than the telegraph. We conclude that the reasonable use of the streets of a city for the equipment of a telephone system is not a new and additional servitude for which the abutting property owner is entitled to compensation. Nor do we agree that the ordinary pole and wires are necessarily a special injury to the enjoyment of the abutting property." The decision in that case, however, was prior to the decision of the Supreme Court of North Dakota in Donovan v. Allert, 91 N. W. 441, 58 L. R. A. 775, in which the learned court arrived at a different conclusion. The latter case is largely relied on by the appellant in support of his contention, but the reasoning of the court in that case does not meet with our approval.

It may be proper to state in conclusion that, while a telephone company is authorized to use the streets of a city for the purpose of constructing, maintaining and operating its telephone system, it must exercise the right in such a manner as not to cause unnecessary injury or inconvenience to property owners.

The order of the circuit court vacating and setting aside the preliminary injunction is affirmed.

FULLER, J., taking no part in the decision.