**David and Kathleen STARK**

v.

**EQUITABLE GAS COMPANY, LLC, incorrectly named as Equitable Gas, LLC, a division of Equitable Resources, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 15, 2015.

Decided May 14, 2015.

Daniel E. Krauth, Pittsburgh, for appellant.

William P. Bresnahan, II, Pittsburgh, for appellees.

BEFORE: DAN PELLEGRINI, President Judge, BONNIE BRIGANCE LEADBETTER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge, PATRICIA A. McCULLOUGH, Judge, ANNE E. COVEY, Judge.

OPINION BY President Judge DAN PELLEGRINI.

Equitable Gas Company, LLC, incorrectly named as Equitable Gas, LLC, a division of Equitable Resources (Equitable), appeals the order of the Westmoreland County Court of Common Pleas (trial court) overruling its preliminary objections to the Petition for the Appointment of Viewers Alleging a DeFacto Taking (Petition) filed by David and Kathleen Stark (collectively, Landowners). We affirm.

In September 1983, Landowners acquired a parcel of property (Stark 1) in North Huntingdon Township (Township), Westmoreland County (County), near the intersection of U.S. Route 30 and Carpenter Lane. (Reproduced Record (R.R.) at 69a). The description of the parcel in the deed begins "at a point on the Westerly right-of-way line of U.S. Route 30, at the Northeast corner of lands now or formerly of George Scheffle," and describes its west boundary line as starting at "a point, said point being the Northerly right-of-way line of an unnamed street 40 feet wide;[1] thence along the Northerly line of the unnamed street a distance of 201.16 feet to a point on the Northerly line of lands now or formerly of George Scheffle...." (*Id.*). The chain of title of the Stark 1 parcel in deeds from 1971, 1975 and 1982 also describe the west boundary line of the property as along "the Northerly right of way line of an unnamed street having a 40-foot right of way...." (*Id.* at 79a, 83a, 87a).

In July 1992, Norwin School District (School District) owned the adjoining parcel of property and granted Equitable a right-of-way for the construction of and ingress and egress to a 10-inch gas pipeline to be buried "along the eastern edge of [the School District]'s 40 foot wide private road...." (R.R. at 46a).[2] In January

---

1. As it has been explained:

    A "monument," when used in describing land, has been defined as "any physical object on the ground which helps to establish the location of the line called for and the term 'monument,' when used with reference to boundaries, indicates a permanent object which may be either a natural or artificial one.... Natural monuments include such natural objects as mountains, streams, rivers, creeks, springs, trees.... Artificial objects and monuments consist of marked lines, stakes, rocks, fences, buildings and similar matters marked or placed on the ground by the hand of man." It has been said that "a stone wall is strong evidence of a boundary line.[]" One court has said that a monument, when used in describing land, is "any physical object on the ground which helps to establish the location of the line called for," whether it be natural or artificial. That court noted that, just as in contracts or wills, the intention of the parties governs the interpretation of deeds and that it is for that reason "that monuments named in deeds are given precedence over courses and distances, because the parties can see the tree, stone, stake, pipe or whatever it may be, which is referred to in the deed, but would require equipment and expert assistance to find a course and distance." "[T]he physical disappearance of a monument does not terminate its status as a boundary marker, provided that its former location can be ascertained through extrinsic evidence."

    *Koennicke v. Maiorano*, 43 Conn.App. 1, 682 A.2d 1046, 1053–54 (1996) (citations omitted).

2. The recorded conveyance stated the following, in pertinent part:

    IN CONSIDERATION of ... SIX HUNDRED TWENTY DOLLARS ($620.00) to it this day in hand paid, being the true and full consideration, receipt of which is hereby acknowledged, [School District], its successors or assigns, ... hereinafter called the Grantor, hereby grant with covenant of general warranty to [Equitable], its successors or assigns, ... hereinafter called the Grantee, a right-of-way upon which to lay, maintain, operate, replace with the same or other size pipe, and remove a pipeline of ten (10) inches in diameter, together with necessary ... other equipment with their housing above or below ground level for such purposes as are deemed necessary by the Grantee, including the right to install, maintain, and replace on said pipeline devices for cathodic protection, text stations, and bonding cables and to construct, maintain, operate, replace and remove communication lines and other communication facilities owned by Grantee, together with equipment appurtenant thereto, on, over and through that certain tract of land situate in the [Township] ... bounded by lands now or formerly of Carpenter Lane, Route 30.

    The said pipeline to be laid approximately along the route laid out and marked for same as follows:

2007, Landowners acquired the School District's adjoining parcel by deed (Stark 2) with the north boundary line described as "**BEGINNING** at a point at the northwest corner of property deeded to [Landowners] and the center of an unopened 40 foot street and south right-of-line of Carpenter Lane (SR 4019); thence from said point of beginning along the south right-of-way line of Carpenter Lane and line of [the School District] South 72° 12′ 12″ West a distance of 24.37′ ...." (*Id.* at 96a).

In July 2007, Landowners hired Dennis Dull (Dull) to complete a survey of their properties. Dull determined that Equitable's pipeline had been installed on the Stark 1 parcel because he determined that

the western boundary of that parcel extended to the center line of the paper street. As a result, in 2009, Landowners filed a trespass action against Equitable and then, in February 2013, filed the instant Petition alleging a *de facto* taking and seeking the appointment of a Board of Viewers.[3] In April 2013, the trial court issued an order appointing a three-member Board of Viewers.

In August 2013, Equitable filed preliminary objections to the Petition arguing that it should be dismissed because: (1) Landowners maintained a separate trespass action while pursuing the instant action under the former Eminent Domain

Beginning at a point of interconnection with [Equitable's] proposed ten (10) inch pipeline to be laid in Carpenter Lane; thence extending in a general northerly direction a distance of 600 feet, more or less; along the eastern edge of Grantor's 40 foot wide private road to a point; thence extending in a general westerly direction, a distance of 20 feet; more or less, to the land of Ballas to the west....

TOTAL DISTANCE: 620 feet, more or less.

TOGETHER with the right of ingress and egress to and from said right-of-way by routes most convenient to the Grantee for the purposes granted herein....

The said pipe shall be buried upon the cultivated portions of said land so that it will not interfere with the cultivation of the same.

\*     \*     \*

The said right-of-way shall be held so long as the same may be useful or necessary for the purposes of the grantee.

ALL the terms and conditions of this right-of-way grant shall extend to and be binding upon the respective heirs, executors, administrators, successors and assigns of the parties hereto....

(R.R. at 46a–47a).

3. Specifically, Landowners alleged the following, in pertinent part:

4. On or about July 30, 1992, [Equitable] was acquiring property in order to construct an underground gas line.

5. [Equitable] contacted [Landowners] in order to amicably acquire an easement across a portion of the Property.

6. On or about November 18, 1992, [Equitable] informed [Landowners] that it no longer required the easement because it had acquired an alternative route.

7. On or about July 2007, in an effort to develop the Property, [Landowners] hired Dennis Dull Land Surveying to survey their property.

8. Dennis Dull discovered that [Equitable] placed the gas line on [Landowners]' property and not on the property they [sic] intended.

9. At no point in time did [Landowners] give [Equitable] the right to place its gas line on their property.

10. [Equitable] has/had no right to place its gas line on [Landowners]' Property.

11. By placing its gas line on [Landowners]' Property, [Equitable] has effectuated a defacto [sic] taking of [Landowners]' Property.

12. The damage suffered by [Landowners] is the immediate, necessary and unavoidable consequence of the exercise of the power of eminent domain.

13. By placing the gas line on [Landowners]' Property, [Equitable] has deprived [Landowners] of all use and enjoyment of their Property.

(R.R. at 5a).

Code;[4] (2) Landowners failed to state a claim for a *de facto* taking because they were not the record owners of the property when the pipeline was laid in 1992; (3) Landowners' action is time barred by the five-year statute of limitations in the former Section 5526(4) of the Judicial Code;[5] and (4) assuming Landowners had an interest in the property, they failed to state a *de facto* taking of their entire property.

■■ At hearing, Landowners withdrew their trespass action. (R.R. at 107a–108a). Dull was qualified as an expert in surveying, but he could not offer a legal opinion on the ownership of paper streets or the meaning of the Stark 1 deed.[6] He testified that he was hired to survey and lay out the property lines for the Stark 1 parcel because Landowners wanted to add a building and a parking lot to their property. He stated that he obtained the deed from the early 1980s which matched a survey that was done in 1961; deeds for the adjoining properties; the tax map; and a survey that the School District had made.

Dull testified that the property lines of Stark 1 and Stark 2 went to the center of the paper street so that an area of 20–feet long by 200–feet wide of the paper street was on each parcel. (R.R. at 126a–127a). He stated that the boundary for Stark 1 went to the center line of the paper street and that the gas line was placed on the Stark 1 parcel in 1992. (*Id.* at 140a–142a). He testified that one of the deeds refers to a private road and others referred to an unopened road, and he did not find anything showing that it was intended to be turned over to the Township at any time. (*Id.* at 146a, 147a).

■■ Dull conceded that each of the 1971, 1975, 1982 and 1983 deeds described the west boundary of the Stark 1 parcel as the northerly line of the paper street so that the gas pipeline as outlined was not laid within the parcel. (R.R. at 148a–154a). However, he testified that the 1983 deed stated that the boundary for the Stark 1 parcel was 180 feet from the westerly side of Route 30, and when he measured 180 feet as called for in the deed, the

4. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101–1–903, repealed by Act of May 4, 2006, P.L. 112, *as amended*, 26 Pa.C.S. §§ 101–1106.

5. 42 Pa.C.S. § 5526(4) (repealed by the Act of May 4, 2006, P.L. 112). Section 5526(4) formerly imposed a five-year statute of limitations in "[a] proceeding in inverse condemnation, if property has been injured but no part thereof has been taken, or if the condemnor has made payment in accordance with section 407(a) or (b) (relating to possession and payment of compensation) of the [former Eminent Domain Code]."

6. Because of the way we resolve this matter, we need not address whether this is a paper street—dedicated but not accepted as a public street—or, if it is, what impact it has on ownership of the street. However, we note the law in Pennsylvania regarding ownership of streets is well settled: "Upon a conveyance of land bounded by a street, unless otherwise provided, the grantee takes to the middle of the street, if the grantor owns thus far, subject to the public easement; and when the street is vacated, this portion of it reverts to the grantee." *Barnes v. Philadelphia, Newtown & New York Railroad Company*, 27 Pa.Super. 84, 86 (1905) (citations omitted). Moreover, when a street is accepted, the municipality only receives a right to use the public right-of-way for public purposes, and title to property abutting on a public street extends to the center of that street and is vested in the adjoining landowner. *City of Scranton v. People's Coal Co.*, 256 Pa. 332, 100 A. 818 (1917); *Lockhart v. Craig Street Railway Co.*, 139 Pa. 419, 21 A. 26 (1891); *Gramlich v. Lower Southampton Township*, 838 A.2d 843 (Pa. Cmwlth.2003), *appeal denied*, 578 Pa. 696, 851 A.2d 143 (2004). *See also Miller v. Nichols*, 363 Pa.Super. 508, 526 A.2d 794, *appeal denied*, 517 Pa. 608, 536 A.2d 1332 (1987); *Hindin v. Samuel*, 158 Pa.Super. 539, 45 A.2d 370 (1946).

boundary line fell in the center line of the paper street so his field evidence shows that the deed is incorrect. (*Id.* at 154a–155a, 161a–162a, 172a–173a).[7] He stated that the metes and bounds show that the boundary of the Stark 1 parcel went to the center of the paper street, and that the original tax map also showed that the boundary went to the center of the street. (*Id.* at 162a). He testified that he never found any evidence of a dedication of the paper street. (*Id.* at 146a, 174a).

In December 2013, the trial court issued an order: (1) overruling the preliminary objection that Landowners were not the record owners at the time of the taking because Dull "presented compelling evidence based upon actual measurements made in the field, that [Landowners] owned property up to the center line of the unopened road at the time [Equitable]'s gas line was installed;" (2) overruling the preliminary objection based on the statute of limitations "in that [Landowners'] cause of action is governed by the 21–year stat-

ute of limitations set forth in [the former Section 5530(a)(3) of the Judicial Code, 42 Pa.C.S. § 5530(a)(3) (repealed by the Act of May 4, 2006, P.L. 112) (imposing a 21–year statute of limitations for "[a] proceeding in inverse condemnation, if property has been taken and the condemnor had not made payment in accordance with section 407(a) or (b) (relating to possession and payment of compensation)" of the former Eminent Domain Code) ];" and (3) overruling the preliminary objection that Landowners failed to state a *de facto* taking of their entire property "in that the extent of the taking and the damages resulting are matters to be determined by the Board of Viewers." (Trial Court 12/17/13 Order; R.R. at 216a–217a). The trial court also directed the Board of Viewers appointed in April 2013 to determine the amount of damages that Landowners sustained. (*Id.*).

On appeal,[8] Equitable argues[9] that the trial court erred in overruling its

7. As the Superior Court has explained:

"The rule that artificial monuments control courses and distances in case of conflict is not an imperative and exclusive one, but is a rule of construction to ascertain, or to aid in determining, the intention of the parties; and it is not followed where strict adherence to the call for a monument would lead to a construction plainly inconsistent with such intention.

"Accordingly, courses and distances will prevail over monuments where absurd consequences might ensue by giving controlling influence to a call for the latter, or where, in any given case, a consideration of all the facts and circumstances shows a call for distance to be the more reliable or certain, or where the call for the monument was inserted by mistake or inadvertence." *Baker v. Roslyn Swim Club*, 206 Pa.Super. 192, 213 A.2d 145, 149 (1965) (citation omitted). *See also J.R. Howarth v. Miller*, 382 Pa. 419, 115 A.2d 222, 224 (1955) ("[A]lthough monuments are very important in determining questions of boundary, '[w]here monuments are doubtful, resort will be had to the

courses, distances, and quantity.' ") (citation omitted); *Hall–Mark Realty Corp. v. McGunnigle*, 253 N.Y. 395, 398, 171 N.E. 583, 584 (1930) ("When the line of another tract is called for in the description of a deed as one of the boundaries of the land conveyed, the line ordinarily runs to such boundary line. When such line is certain and notorious, it is to be treated as the monument or boundary rather than the ambiguous location of the center of a paper street which need not be taken as a monument or permanent landmark for the purpose of fixing the boundary line in this case.")

8. In an eminent domain case disposed of on preliminary objections to a claim for a *de facto* taking, our scope of review is limited to determining whether the trial court's necessary findings of fact are supported by competent evidence and whether an error of law or an abuse of discretion was committed. *Nolen v. Newtown Township*, 854 A.2d 705, 708 n. 5 (Pa.Cmwlth.2004). In an eminent domain proceeding, the factfinder is to resolve conflicts in the evidence and not the reviewing

preliminary objections because its finding that the boundary of the Stark 1 parcel extended to the middle of the paper street is not supported by competent evidence and Landowners' claim is time-barred because they failed to show that they owned the property on which the pipeline was laid in 1992. We do not agree.

As indicated above, the 2007 deed by which the School District conveyed the Stark 2 parcel to Landowners describes the north boundary line as "**BEGINNING** at a point *at the northwest corner of property deeded to [Landowners in Stark 1 ] and the center of an unopened 40 foot street* and south right-of-line of Carpenter Lane (SR 4019); thence from said point of beginning along the south right-of-way line of Carpenter Lane and line of [the School District] South 72° 12' 12" West a distance of 24.37' . . . ." (R.R. at 96a) (emphasis added). Dull corroborated the foregoing boundary line because he testified that the 1983 deed stated that the boundary for the Stark 1 parcel was 180 feet from the westerly side of Route 30, and that when he measured 180 feet as called for in the deed, the boundary line fell in the center line of the paper street. (*Id.* at 154a–155a, 161a–162a, 172a–173a). He stated that the metes and bounds show that the boundary of the Stark 1 parcel went to the center of the paper street, and that the original tax map also showed that the boundary went to the center of the street. (*Id.* at 162a). Moreover, it is undisputed that Equitable buried the gas line "along the easterly edge of the [School District]'s 40 foot wide private road . . . ." (*Id.* at 46a). (*See also* Supplemental Reproduced Record at 1b; Plaintiff's Exhibit 3).

■ Based on the foregoing, there is ample competent evidence supporting the trial court's findings that the boundary for the Stark 1 and Stark 2 parcels extended to the center of the paper street and that Equitable buried the gas line on Landowners' Stark 1 parcel in 1992. We simply will not accede to Equitable's request that we reweigh the conflicting evidence that was presented to the trial court showing a different boundary line. As a result, the trial court also did not err in determining that Landowners' Petition was not time-barred.[10]

Accordingly, the trial court's order is affirmed.

Judge BERNARD L. McGINLEY did not participate in the decision of this case.

### ORDER

AND NOW, this *14th* day of *May*, 2015, the order of the Westmoreland County Court of Common Pleas dated December 17, 2013, at No. 2013–597, is affirmed.

---

court. *Harborcreek Township v. Ring,* 48 Pa. Cmwlth. 542, 410 A.2d 917, 919 (1980). Inconsistencies in evidence only go to evidentiary weight and not to its competence. *In re Petition of Viola,* 838 A.2d 21, 27 (Pa.Cmwlth. 2003). Finally, "[i]t is well established that the actual location of property boundary lines is a question of fact." *Pennsylvania Game Commission v. K.D. Miller Lumber Company,* 654 A.2d 6, 10 (Pa.Cmwlth.1994), *appeal denied,* 540 Pa. 643, 659 A.2d 561 (1995).

9. Equitable raises an additional claim of error, but acknowledges that it was not a basis upon which the trial court relied in ruling on the preliminary objections. Because we affirm on the basis upon with the trial court relied, we will not address this issue.

10. *See, e.g., Appeal of Krauss,* 151 Pa.Cmwlth. 619, 618 A.2d 1070, 1072 (1992) ("Section 5530(a)(3) of the Judicial Code, 42 Pa.C.S. § 5530(a)(3) [ (repealed) ] requires that an action for a *de facto* taking be commenced within twenty-one years. If the evidence supports the trial court's findings that a *de facto* taking has occurred, this provision of the Judicial Code applies.") (citation omitted).

Judge MARY HANNAH LEAVITT, dissenting.

Respectfully, I dissent. This is a straightforward case about the boundary of David and Kathleen Stark's property (Stark I) in 1992, when Equitable Gas Company installed its gas line south of the "Northerly" line of a paper street. The trial court disregarded the language of the deed to Stark I, which states that Stark I is bounded by the "Northerly" line of the paper street, in favor of a surveyor's testimony that the property is bounded by the middle of that paper street. This was error.

The language in the 1983 deed to Stark I describes the boundaries of the property through courses and distances:

> BEGINNING at a point on the Westerly right-of-way line of U.S. Route 30, at the Northeast corner of lands now or formerly of George Scheffle, and the Southeast corner of herein described premises; thence North 31° 15′ West along the Westerly right-of-way line of U.S. Route 30, a distance of 136.22 feet to a point; thence by an arc curving to the left, along the combined right-of-way lines of U.S. Route 30 and Carpenter Lane, by a radius of 50 feet and an arc distance of 67.84 feet to a point on the Southerly right-of-way line of Carpenter Lane; thence continuing along the Southerly right-of-way line of Carpenter Lane South 71° 16′ West, a distance of 136.33 feet to a point, *said point being the Northerly right-of-way line of an unnamed street 40 feet wide; thence along the Northerly line of the unnamed street,* a distance of 201.16 feet to a point on the Northerly line of lands now or formerly of George Scheffle; *thence along said Scheffle line North 61° 45′ East, a distance of 180 feet to a point on the Westerly right-of-way line of U.S. Route 30* at the place of beginning.

Reproduced Record at 69a (R.R. ——) (emphasis added). The deeds to the Stark I parcel dated 1971, 1975 and 1982 also describe the western boundary line of the property as along "the Northerly right of way line of an unnamed street having a 40–foot right of way...." R.R. 79a, 83a, 87a. The majority uses the 2007 deed to the adjacent parcel, Stark II, to reject the plain language in the Stark I deed.[1] However, the deed to Stark II is irrelevant, as are tax maps. The issue is whether the Starks had a recorded property interest in the property where the pipeline was laid in 1992, and the only evidence relevant to that issue is the deed to Stark I.

I agree with Equitable Gas Company that the trial court erred in finding that the western boundary of Stark I was *not* "along the Northerly line of the unnamed street," as the deed states. In so holding, the trial court relied solely on the testimony of the Starks' surveyor, Dennis Dull, and not on the deed itself. Dull reviewed the pertinent deed language, which calls for the boundary of Stark I to begin at a point on the right-of-way of U.S. Route 30 and run counterclockwise along the recited course back to the place of beginning. R.R. 69a. Dull conceded that the deeds in the chain of title all describe the western boundary of Stark I as the "[n]ortherly right-of-way" of the unnamed paper street. *Id. See also* R.R. 147a.

Notwithstanding this unambiguous deed language, Dull testified that, based on his survey, the western boundary of Stark I is actually the center of the unnamed paper street. In explaining how he arrived at that conclusion, Dull revealed that he did

---

1. The deed to Stark II states that its eastern boundary lies in the middle of the paper street. Accordingly, the deeds to Stark I and Stark II do not meet. The Starks can file a quiet title action to reform one or both of their deeds to address this problem.

not take the 180–foot measurement as called for in the deed. He measured 180 feet *from* the westerly right-of-way of Route 30 *to* the center line of the unnamed paper street. However, the call of the deed states that 180 feet is to be measured *from* the northerly right-of-way of the unnamed paper street *to* the westerly boundary of Route 30. R.R. 69a.

By reversing the final call of the deed, Dull effectively rewrote the deed. This is contrary to settled Pennsylvania law that "[r]eversing the lines of a survey should be resorted to only when the terminus of a line cannot be ascertained by running forward." *Merlino v. Eannotti*, 177 Pa.Super. 307, 110 A.2d 783, 787 (1955). Further, when the calls of a deed are found to be inconsistent,

> resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries (which are considered a sort of monument), and thereafter to courses and distances.

*Doman v. Brogan*, 405 Pa.Super. 254, 592 A.2d 104, 110 (1991) (quoting *Baker v. Roslyn Swim Club*, 206 Pa.Super. 192, 213 A.2d 145, 148 (1965)). In the case of Stark I, the drafters of the deed used the unnamed paper street as a monument because its location is fixed and permanent. The paper street was also used to .define a boundary in the deed of Stark II.

Our Supreme Court has held that an unopened paper street is an artificial monument that is controlling of the description as against the distance. *Felin v. City of Philadelphia*, 241 Pa. 164, 88 A. 421 (1913). In *Felin*, the deed described one course of a boundary as running "to a point in the middle of a new street about to be laid out." *Id.* at 422. The Court held that the "reference to the so-called street was simply used *to designate an artificial monument* so as to fix a definite point for the lines of his lot." *Id.* at 423 (emphasis added). The Court affirmed the trial court's determination that "the description in the original deed carried the plaintiff's title to a point fixed as a monument." *Id.*

Significantly, the parties do not dispute the location and width of the unnamed paper street chosen as an artificial monument by the drafters of the Stark I deed. Its location is neither "doubtful" nor will reliance on it lead to "absurd consequences." Majority op. at 765 n. 7.[2] The unnamed paper street served as a monument in both deeds because it is fixed and unmovable. Under the canons of deed construction, the artificial monument, *i.e.*, the northern boundary of the unnamed street, trumps the recited "180 feet" distance. The canon is logical because there is more likely to be a mistake in a distance measurement, either by the surveyor or by the person transcribing his measurement. Assuming, *arguendo*, that the 180–foot call of the deed is, as Dull suggested, in error,

---

**2.** The "Westerly right-of-way of Route 30" is also an artificial monument. In *Gramlich v. Lower Southampton Township*, 838 A.2d 843, 846 (Pa.Cmwlth.2003), this Court explained that the "highway [is] not the same as the right-of-way." More specifically, we explained:

> A highway, for purposes of sovereign immunity, encompasses the "cartway," that is, the paved and traveled portion of the highway, and the berm or shoulder, the paved portion to either side of the traveled portion

of the road, [but] not the right-of-way. The ... right-of-way off the highway is clearly neither intended to be used nor is regularly used for vehicular travel.

*Id.* at 846–47 (citations omitted). The paved road and shoulder of Route 30 are visible, but the line of the right-of-way is an artificial monument that can only be determined by reference to the public records on property. The same is true for the unnamed paper street that serves as an artificial monument in the deeds to the Stark I and Stark II properties.

that fact is irrelevant to the outcome of this case.

In summary, the terminus of each line of the Stark I parcel can be ascertained by running forward through the courses and distances recited in the deed. Dull's testimony was not competent to establish a different western boundary of the Stark I parcel. In holding otherwise, the majority rejects well-established Pennsylvania canons of deed interpretation. Accordingly, I would hold that the trial court erred in relying upon Dull's testimony to rewrite the deed when it overruled Equitable's preliminary objection to the Starks' condemnation action. The Starks did not prove they were the record owners of the property in question at the time of the alleged taking.[3]

For all of the foregoing reasons, I would reverse the trial court's order overruling Equitable's preliminary objection to the Starks's *de facto* condemnation action.

Judge PATRICIA A. McCULLOUGH joins in this dissent.

---

3. Equitable also addresses an argument raised by the Starks for the first time in their post-hearing brief, *i.e.*, that they acquired title to the center line of the unnamed paper street in 1992 by operation of Pennsylvania law. In advancing this argument, the Starks relied upon "settled law in Pennsylvania that where the side of a street is called for as a boundary in a deed, the grantee takes title in fee to the center of [the street], if the grantor had title to that extent, and did not expressly or by clear implication reserve it." *Ferko v. Spisak*, 373 Pa.Super. 303, 541 A.2d 327, 329–30 (1988) (quoting *Rahn v. Hess*, 378 Pa. 264, 106 A.2d 461, 464 (1954)). I agree with Equitable that *Ferko* is inapposite. *Ferko* arose from an action to quiet title, not a condemnation proceeding. Further, the disputed boundary in *Ferko* was a dedicated but unopened street. By contrast, in the case at bar, the Starks produced no evidence that the unnamed paper street was ever dedicated, and their expert testified that it was a private road. I agree with Equitable that this case is more akin to *Beechwood v. Reed*, 438 Pa. 178, 265 A.2d 624, 626 (1970), in which our Supreme Court held that "[w]here the street called for as a boundary is not a public highway nor dedicated to public use, the grantee does not take title to the middle of it but acquires an easement by implication over it."