**PENNSYLVANIA GAME COMMISSION,**
**Petitioner,**

**v.**

**K.D. MILLER LUMBER COMPANY, INC. and Kenneth D. Miller, its president, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 20, 1994.
Decided Dec. 22, 1994.

William R. Pouss, Chief Counsel, for petitioner.

David D. Engle, for respondent.

Before McGINLEY and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

The Pennsylvania Game Commission (Commission) petitions for review of an adjudication and order of the Board of Property (Board) which settled a property boundary dispute between K.D. Miller Lumber Company, Inc., through its President Kenneth D. Miller (jointly referred to as Miller), and the Commonwealth.[1]

Miller filed a petition with the Board to which the Commission responded by filing an answer and new matter. Miller filed an answer to the Commission's new matter. Prior to the hearing before the Board, the Commission filed a motion to join indispensable parties. Following the hearing, the Board issued its adjudication which included lengthy findings of fact, summarized as follows.

Both Miller and the Commission have asserted title to a strip of land containing approximately nineteen acres in Boggs Township, Clearfield County. Miller bases its claim of title on a deed recorded on May 29, 1991 in Clearfield County wherein Dresser

---

1. This matter commenced when the Commission filed an action in this court on October 10, 1991, seeking to enjoin Miller from removing timber from the tract in question. By order dated November 26, 1991, we ordered the parties to file a claim with the Board based on the representation of Kenneth Miller that he would voluntarily cease logging and timbering operations until title to the disputed property is settled. According to the Board, Miller apparently sought to ensure that its interests were secured by filing a claim with the Board on November 20, 1991, six days prior to our order. The parties subsequently agreed that the Commission would withdraw its action pending before this court. Because the Commission never withdrew its action, its action was dismissed without prejudice by our order dated April 20, 1993.

Industries, Inc. conveyed a tract of land to Miller (hereinafter referred to as "the Miller deed").[2]

The Commission bases its claim of title on a deed dated and recorded September 10, 1934 in Clearfield County ("the Commission deed"). By the Commission deed, Martha E. Gould, et al. conveyed to the Commonwealth, for the use of the Commission, a tract of land containing 1,180.3 acres situate in Boggs Township. The Commission deed describes the tract as including "all of the Mary Morris and the Thomas L. Moore Warrants, and part of the William Morris Warrant." The nineteen acres in dispute are located in the northwest corner of the Thomas Smith warrant.[3]

Miller claims that the legal description found in its description clause of the deed, and the immediately preceding deed in the chain of title, is superior to the description in the Commission deed. Further, Miller claims that the Miller deed description is consistent with the original warrant surveys drawn of the area. The Board found that the deed from which Miller derives title is superior to the deed from which the Commission derives title.

The Board found Charles H. Krey, a licensed and professional engineer, qualified as an expert to testify regarding his survey of the area on behalf of Miller. Mr. Krey testified that the Thomas Smith and the Thomas Moore boundary lines, both southern and northern, run parallel east to west in a straight line.

Greg Shufran, a project manager with Meese Engineering, also testified on behalf of Miller. The Board found that, although at the time of the hearing Mr. Shufran had not yet received a land surveyor's license, he had participated in approximately 300 surveys, a third of which took place in Clearfield County.

■ Mr. Shufran testified his visual inspection of the tract and its monuments[4] allowed him to locate ten corners to the Miller property. Mr. Shufran identified corner number 6 as the Miller corner, marked by rocks that had "been there a while ... because they are covered with earth." (Finding of Fact No. 21.) Mr. Shufran identified corner number 5 as the Commission corner, marked by a 5/8ths-inch rebar of recent origin and stones. Mr. Shufran characterized the corner number 5 monument, consisting of the type of stone found in a retaining wall near a mine drift, as "old but not real old either." (Finding of Fact No. 24.)

Thomas Michael Hayden, a real estate specialist with the Commission's Bureau of Land Management, testified on behalf of the Commission. The Board found that Mr. Hayden's qualifications were sufficient to permit him to testify as an expert regarding the surveys of the disputed land, although his experience in Clearfield County was limited.

Mr. Hayden testified that a line drawn from the northwest corner of the Thomas Moore warrant to the corner that the Commission alleges is the northwest corner of the

---

2. The legal description of the tract in the Dresser Industries, Inc. to Miller deed reads as follows:
   BEGINNING at a black oak, thence by William Morris survey formerly owned by Josiah W. Smith, East 255 perches to post, thence South by the Stephen Kingston survey to a chestnut oak, corner of Daniel Smial land 136 perches, thence along his line West 255 perches to line of survey in the name of Thomas S. Moore, thence by the same North 136 perches to the Beginning. Continuing 202 acres more or less. Being the North half of the survey in the name of Thomas Smith.
   Neither of the trees referenced in the deed were in existence when the property was conveyed to Miller in 1991.

3. The parties stipulated that the warrant lines of the warrants in question, the Thomas Smith, the

William Morris, the Thomas Moore and the Mary Morris warrants, are all in a straight line running east and west.
   The boundary line in question is a warrant boundary between the William Morris Warrant and the Thomas Smith Warrant. Both parties agree that the connected warrant maps offered into evidence by Miller demonstrate that the boundary at issue was part of a boundary extending in a straight line for almost 20,872 feet. The crux of the Commission's position is that there is a 400 foot "offset" in the warrant allowing for inclusion of the disputed tract with the Commission's property.

4. Monuments are visible markers or indications left on natural or other objects indicating the line of a survey. *Grier v. Pennsylvania Coal Company*, 128 Pa. 79, 18 A. 480 (1889).

Thomas Smith warrant would be a diagonal or sloping line.

Lastly, the Board found that Kenneth Miller testified he contacted the head of the Commission, Peter Duncan, in June or July, 1991, to discuss the discrepancy in the boundary lines prior to the commencement of timber harvesting.

After consideration of the boundary line dispute, the Board concluded that Miller had proven by substantial evidence that the northern boundary line of the Thomas Smith warrant is the northern boundary line of the tract conveyed to it by Dresser Industries. The Board rejected the Commission's argument that Miller was equitably estopped from bringing this action because it allegedly had knowledge of the boundary dispute prior to acquiring the property. The Commission appeals from this adjudication.

▪ Initially, we note that our scope of review, as statutorily mandated, requires us to affirm the Board's adjudication unless the adjudication is in violation of the petitioner's constitutional rights, or it is not in accordance with law, or if any finding of fact made by the Board and necessary to support its adjudication is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

On appeal, the Commission presents the following issues for our consideration: (1) whether the Board erred by failing to join an indispensable party whose boundary would also be fixed by the Board's decision; (2) whether the Board erred by entirely disregarding without explanation the testimony of the Commission's Registered Surveyor, Glenn Arnold; (3) whether the Board erred in concluding that Miller was not estopped or barred by laches from asserting title to the disputed area; (4) whether the Board erred in concluding that a deed relying on an original warrant description which calls for non-existent monumentation (the Miller deed) takes precedence over lines clearly established on the ground and senior warrant lines (the Commission deed); and (5) whether the

Board's findings of fact are supported by substantial evidence.

We will first address the Commission's argument concerning why the private property owners whose own boundary lines are called into question by the Board's determination were not joined as indispensable parties. The Commission asserted through its motion to join indispensable party that the owner of an adjoining parcel of land, now or formerly Annie A. Dixon, is indispensable because if the relief requested by Miller was granted, the adjoining tract would be affected.[5]

▪ To be an indispensable party, one must have rights so directly connected with and affected by the litigation that she must be a party to protect such rights; her absence renders any order or decree of the court null and void for want of jurisdiction. *Zerr v. Department of Environmental Resources,* 131 Pa.Commonwealth Ct. 317, 570 A.2d 132 (1990).

▪ In the present matter, the Board was presented with Miller's narrow request to determine the ownership of nineteen acres of disputed property. Under no conceivable circumstances would the boundary of the Annie A. Dixon tract be affected by the determination of the Board concerning the rightful ownership of the disputed nineteen acres. The petition did not request the Board to redraw the boundary of the disputed tract, only to determine its ownership. Therefore, we conclude that Annie A. Dixon cannot be considered an indispensable party to the adjudication.

▪ Next, the Commission argues that the Board capriciously disregarded competent evidence by failing to make any findings on the credibility or substance of its primary expert witness, its registered surveyor Glenn Arnold. The Commission asserts that the Board failed to even make reference to the testimony of Mr. Arnold in its adjudication.

As with other administrative agencies, all determinations of witness credibility and evi-

---

5. Miller claims ownership of half of the width of the Thomas Smith Warrant, while the second half is purportedly owned by Annie A. Dixon.

dentiary weight are solely within the province of the Board. *T.R.A.S.H., Ltd. v. Department of Environmental Resources*, 132 Pa.Commonwealth Ct. 652, 574 A.2d 721 (1990). Accordingly, it is not the function of this court to judge the weight and credibility of the evidence given before an administrative agency. *Makris v. Bureau of Professional and Occupational Affairs*, 143 Pa.Commonwealth Ct. 456, 599 A.2d 279 (1991). In deference to the Board, therefore, we will not challenge the Board's assessment of credibility or evidentiary weight concerning the testimony of Mr. Arnold, nor can we question the omission of any reference to the testimony in the Board's adjudication. In exercise of its fact finding function, the Board chose to treat Mr. Arnold's testimony in the manner it deemed proper.

The Commission next asserts that Miller should be barred by the doctrine of laches or by estoppel from asserting title to the disputed tract because Miller knew of the disputed boundary line prior to purchasing the land, but failed to challenge the issue for a number of years. Additionally, the Commission argues that Harbison–Walker Refractories, Inc., Miller's predecessor in title as a subsidiary of Dresser Industries, had knowledge of the boundary dispute as early as 1901 but failed to act. This argument is without merit.

■ The doctrine of laches bars relief when the moving party does not use due diligence and fails to promptly institute an action to the prejudice of another. *Wilson v. King of Prussia Enterprises, Inc.*, 422 Pa. 128, 221 A.2d 123 (1966). To successfully raise a doctrine of laches defense, the burden is on the respondent to establish: (1) a delay arising from the petitioner's failure to exercise due diligence; and (2) prejudice to the respondent resulting from the delay. *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988).

■ Likewise, the doctrine of equitable estoppel protects the reasonable expectations of a moving party who relies on another's course of conduct by preventing that party

from taking a position injurious to the moving party that is inconsistent with a position previously taken. *Doppler v. Doppler*, 393 Pa.Superior Ct. 600, 574 A.2d 1101 (1990).

■ It is clear from the record, as the Board properly determined, that Miller did not fail to exercise due diligence. To the contrary, Mr. Miller testified he made an inquiry of the Commission in an effort to resolve the dispute in a timely manner upon acquiring title to his property in late May, 1991.[6] Further, there was no competent evidence submitted to the Board which establishes what Harbison–Walker knew about the disputed tract or when they knew it. In that light, the Commission has failed to meet its burden of proof.

■ Finally, the Commission argues that the Board erred in concluding that a deed description which calls for non-existent monumentation prevails over a well monumented boundary line. The Commission asserts that the legal description in the Miller deed referring to original warrant monumentation that no longer exists should be superseded by alleged lines clearly established on the ground and senior warrant lines. Although connected warrant drafts call for the subject boundary line to be a straight line between a number of warrants, the Commission maintains that monumentation on the ground establishes an offset line, and supports placement of the boundary line where the Commission surveyor located it in 1934. We disagree.

It is well established that the actual location of property boundary lines is a question of fact. *Pennsylvania Game Commission v. Keown*, 80 Pa.Commonwealth Ct. 471, 471 A.2d 937 (1984). Our review of the record reveals substantial evidence in support of the Board's findings of fact, as well as its conclusion that the northern boundary of the Thomas Smith warrant should be recognized as the northern boundary line of the Miller property.

---

6. Mr. Miller testified he contacted Peter Duncan in June or July of 1991 prior to beginning to harvest timber on the disputed tract. The Commission initiated its equity action in October, 1991, followed by Miller's petition to the Board on November 21, 1991.

 

The testimony of practical surveyors of large experience, especially those familiar with the original monuments on the property, is extremely valuable in establishing the location of boundary lines. *Will v. Piper*, 184 Pa.Superior Ct. 313, 134 A.2d 41 (1957).

Mr. Krey testified he walked the subject tract three times over a thirty year period. For the purposes of the present dispute, he utilized a warrant map traced from a state map certified by the Department of Internal Affairs in 1922. Although Mr. Shufran lacked the credentials of Mr. Krey, nonetheless, the Board rightly considered his observations of the tract's monumentation.

Mr. Krey testified the Thomas Smith and Thomas Moore boundary lines, both southern and northern, run parallel east to west in a straight line, while Mr. Shufran identified both the corner Miller asserts is the northwest corner of the Thomas Smith warrant (corner number 6) and the corner which the Commission asserts is the northwest corner (corner number 5). Corner number 5 was located some 400 feet to the south of corner number 6. Mr. Shufran characterized the monumentation at corner number 6 as much older.

If the Board had found corner number 5 to be the northwest corner of the Thomas Smith warrant, the resulting boundary line would be diagonal rather than straight east and west. This result would be in direct contradiction to the original warrants and the credible, expert testimony of Mr. Krey. Instead, substantial evidence supports the Board's determination that the northern boundary of the Thomas Smith warrant is the northern boundary of the tract conveyed to Miller by Dresser Industries. Thus, title to the disputed nineteen acre tract belong with Miller.

Accordingly, the adjudication and order of the Board is affirmed.

### ORDER

NOW, this 22nd day of December, 1994, the order of the Board of Property, dated

November 16, 1993, at No. 91–02, is hereby affirmed.