**Joseph BUONCUORE, Jr., Petitioner,**

v.

**PENNSYLVANIA GAME COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 20, 2001.

Decided May 30, 2001.

Joseph Buoncure, Jr., petitioner, pro se.

William R. Pouss, Harrisburg, for respondent.

Before SMITH, FRIEDMAN, Judges, and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Joseph Buoncuore, Jr. (Buoncuore) has filed a *pro se* petition for review of the December 6, 2000 decision of the Pennsylvania Game Commission (Commission), revoking Buoncuore's hunting and furtaking privileges from July 1, 2001 through April 15, 2003, for violating section 2505 of the Game and Wildlife Code[1] (Game Code) with regard to safety zones.[2] We affirm.

On September 24, 1998, at approximately 7:00 p.m., Wildlife Conservation Officer

---

*Pheasant Run Civic Organization v. Board of Commissioners*, 60 Pa.Cmwlth. 216, 430 A.2d 1231, 1233, n. 4 (1981).

1. 34 Pa.C.S. § 2505.

2. Section 2505(a) of the Game Code makes it unlawful to hunt game or wildlife, or dis-

charge a weapon, within a safety zone. 34 Pa.C.S. § 2505(a). A safety zone is defined as the area within 150 yards of an occupied building. 34 Pa.C.S. § 2505(c). A violation of section 2505(a) of the Game Code is a summary offense of the fourth degree. 34 Pa.C.S. § 2505(b).

Michael Doherty (Doherty) received a call from the Tredyffrin Township (Township), Chester County Police reporting complaints that hunters were shooting within safety zones in the Township. (R.R. at 23–24.) Doherty immediately dispatched a deputy to the scene, and, the next day, Doherty conducted his own investigation of the scene. During this investigation, Doherty found casings from thirty twelve-gauge three and one-half inch shotgun shells lying within two safety zones; specifically, the shell casings were located within forty feet of a commercial building and 120 yards of a private residence.[3] (R.R. at 24–25; see Findings of Fact, Nos. 2, 6.) One of the complainants stated that he thought the shooters were named "Joe" and "Guy." (Findings of Fact, No. 2.)

Subsequently, Doherty learned that, on September 12, 1998, an individual named "Joe" had received a written warning for hunting in a safety zone in neighboring Delaware County. From that written warning, Doherty learned that Buoncuore had used the same kind of ammunition discovered in the Township investigation, and Doherty was able to obtain the serial number of the gun Buoncuore was using. (Findings of Fact, No. 3.) After locating the firearms dealer who marketed this type of shotgun, Doherty learned that the dealer had sold the shotgun to one of his employees who, in turn, sold the firearm to a Joseph Buoncuore. (Findings of Fact, No. 4; R.R. at 27, 30.) After obtaining a search warrant, Doherty recovered a Remington shotgun, and the weapon's serial number matched that on the written warning issued to Buoncuore and on the shotgun sold to Joseph Buoncuore. (Findings of Fact, No. 5.)

Doherty submitted the shotgun and the thirty shell casings to the Pennsylvania State Police, Bureau of Forensics and Criminal Identification (Bureau), which determined that three of the spent casings definitely were fired from the shotgun and five could have been fired from the shotgun; no positive determination could be made regarding the remaining casings. (Findings of Fact, No. 6.)

On November 9, 1998, Doherty issued two citations to Buoncuore, charging him with violating section 2505(a) of the Game Code for hunting within 150 yards of an occupied building.[4] (Findings of Fact, No. 7; R.R. at 3–4.) Subsequently, it was discovered that Buoncuore previously had been convicted of a felony, and, thus, his legal possession of a firearm was questionable. (Findings of Fact, No. 8.) After discussions with the Delaware County District Attorney (DA), and upon the DA's request, Doherty voluntarily withdrew the charges under the Game Code so that the DA could pursue more serious charges (Delaware County Criminal Charges) against Buoncuore. (Findings of Fact, No. 8; R.R. at 34–35.)

At the preliminary hearing on the Delaware County Criminal Charges, Doherty asked Buoncuore if he ever allowed anyone else to use this particular shotgun, and Buoncuore indicated that no one else uses the gun; Buoncuore specifically added that his father, Joseph Buoncuore, Sr. (Father), does not use the shotgun. (Findings of Fact, No. 9; R.R. at 39–40.) Based on this statement, as well as other evidence Doherty had gathered, Doherty decided to pursue the revocation of Buoncuore's hunt-

---

3. Doherty also discovered other hunting equipment and geese carcasses. (R.R. at 25.)

4. Doherty also issued a third citation to Buoncuore, charging him with violating section 2102(b) of the Game Code, 34 Pa.C.S. § 2102(b), for hunting geese after the lawful shooting hours. (Findings of Fact, No. 7; R.R. at 2.)

ing and furtaking license under section 2741(b)(2) of the Game Code, 34 Pa.C.S. § 2741(b)(2). (R.R. at 42–43.) On May 30, 2000, the Commission issued an Order to Show Cause why the Commission should not revoke Buoncuore's hunting and furtaking privileges, and Buoncuore requested a hearing on the matter. (R.R. at 5.)

At the hearing, Doherty testified in support of the revocation, providing testimony consistent with the facts as set forth above. Testifying in his own defense, Buoncuore stated only that he was not at the scene of the violation on September 24, 1998 and that no physical evidence was offered to prove that he was at the scene that day.[5] (Findings of Fact, No. 10.)

After the hearing, the hearing officer recommended to the Commission's Executive Director (Director) that Buoncuore's hunting and furtaking license be revoked from July 1, 2001 through April 15, 2003.[6] The Director concurred with the hearing officer's recommendations and, accordingly, revoked Buoncuore's hunting and furtaking license for that period. Buoncuore

now petitions this court for review of the decision revoking his license, arguing that the Commission erred in finding that the charges against him were based upon "compelling circumstantial evidence." [7]

Section 2741(b)(2) of the Game Code provides, in relevant part,

the [C]ommission may revoke any hunting or furtaking license ... if the licensee ... [h]as been *accused* of having violated any of the provisions of Chapter 25 (relating to protection of property and persons) *even though such person has not been convicted* of a violation of that chapter.

34 Pa.C.S. § 2741(b)(2) (emphasis added). Here, Buoncuore clearly was accused of having violated the provisions of Chapter 25 as evidenced by the two citations that were issued to him for violating section 2505(a), hunting within a safety zone. Accordingly, there is substantial evidence to support the revocation of Buoncuore's hunting and furtaking license.[8]

Accordingly, we affirm.

---

5. Buoncuore also offered the testimony of his Father. The Father testified that he and his son have the same name, the Father being "senior" and the son being "junior." (Findings of Fact, No. 11.) The Father also testified that he, not his son, purchased the shotgun from the gun shop employee. (Findings of Fact, No. 11; R.R. at 61–62, 71–72.) The Father stated that he was not at the scene of the violation on September 24, 1998, so he could not testify regarding those events; however, the Father testified to the events of September 12, 1998. (R.R. at 60, 63–70.)

6. These dates represent two years less the two and one-half months that Buoncuore's license already had been suspended prior to the hearing due to his failure to request a supersedeas. (R.R. at 150.)

7. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are sup-

ported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

8. Buoncuore does not raise the issue of what impact the withdrawal of the charges has on his accusation. Instead, Buoncuore argues that the charges were not valid because they are not supported by the evidence. In challenging the charges, Buoncuore's arguments are nothing more than challenges to the Commission's credibility determinations and determinations regarding what weight to accord the evidence offered at the hearing; Buoncuore is simply asking this court to credit his version of the facts. It is well settled that, as with other administrative agencies, all determinations of witness credibility and evidentiary weight are solely within the province of the Commission. *See Pennsylvania Game Commission v. K.D. Miller Lumber Co., Inc.*, 654 A.2d 6 (Pa.Cmwlth.1994), *appeal denied*, 540 Pa. 643, 659 A.2d 561 (1995). Additionally,

*ORDER*

AND NOW, this 30th day of May, 2001, the decision of the Pennsylvania Game Commission, dated December 6, 2000, is hereby affirmed.

we note that the charges were withdrawn in favor of pursuing more serious criminal charges, not as a result of the lack of evidence.