# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation By Sunoco : 
Pipeline L.P. of Permanent and : 
Temporary Rights of Way for the : 
Transportation of Ethane, Propane, : 
Liquid Petroleum Gas, and other : 
Petroleum Products in the Township : 
of Upper Allen, Cumberland County, : 
Pennsylvania over the Lands of : 
Patricia A. Perkins and Thomas V. : 
Perkins : 
 : 
Appeal of: Patricia and Thomas : No. 2030 C.D. 2016 
Perkins : Submitted: April 21, 2017

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                    FILED:  June 29, 2017

Patricia A. Perkins and Thomas V. Perkins (Condemnees) appeal from the November 10, 2016 Order of the Court of Common Pleas of Cumberland County (common pleas) that overruled Condemnees' Preliminary Objections (POs) to the Declaration of Taking (Declaration) filed by Condemnor Sunoco Pipeline L.P. (Sunoco).  This case is one of several filed across the Commonwealth challenging the propriety of Sunoco's authority to condemn property in order to facilitate construction of the second phase of its Mariner East Project known as the Mariner

East 2 pipeline. We first addressed the propriety of such a taking in *In re Condemnation by Sunoco Pipeline, L.P.*, 143 A.3d 1000 (Pa. Cmwlth.), *petition for allowance of appeal denied*, (Pa., Nos. 571, 572, 573 MAL 2016, filed December 29, 2016) (*Sunoco I*), an *en banc* decision wherein we found common pleas[1] did not err in overruling preliminary objections that were similar to those filed here. More recently, this Court has affirmed other trial courts' decisions overruling similar preliminary objections, largely based upon our holding in *Sunoco I*. *See, e.g.*, *In re Condemnation by Sunoco Pipeline, L.P.* (Pa. Cmwlth., No. 1306 C.D. 2016, filed May 26, 2017) (*Blume*)[2]; *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 565 C.D. 2016, filed May 24, 2017) (*Homes for America*); and *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 220 C.D. 2016, filed May 15, 2017) (*Gerhart*).[3] Recognizing that many of their preliminary objections are now foreclosed by *Sunoco I*, Condemnees abandon those issues on appeal and instead focus on the Property Rights Protection Act (PRPA), 26 Pa. C.S. §§ 201-207, which they contend bars condemnation for a private enterprise, something that was not squarely addressed by *Sunoco I*. While not directly addressed in *Sunoco I*, the determinations made in our prior decision still command a finding that Sunoco, a public utility possessing a Certificate of Public Convenience (CPC) issued by the Pennsylvania Public Utility Commission (PUC),

---

[1] *Sunoco I* also involved an appeal of a decision by common pleas.

[2] *Blume* also involved an appeal of a decision by common pleas. In fact, the parties here stipulated to the admission of the hearing transcripts from that evidentiary hearing in lieu of live testimony from two witnesses. (Stipulation ¶ 3, Reproduced Record (R.R.) at 336a.)

[3] *Homes for America*, *Blume*, and *Gerhart* are unreported panel decisions of this Court, which are cited in accordance with Section 414(a) of this Court's Internal Operating Procedures, which provides that an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

is vested with the power of eminent domain. Thus, as we did in *Sunoco I*, *Homes for America*, *Blume*, and *Gerhart*, we find no error with common pleas' Order and therefore affirm.

This case originated in February 2016 when Sunoco filed a Declaration seeking a permanent easement of 0.25 acres, a temporary easement of 0.09 acres, and an additional temporary workspace easement of 0.86 acres over portions of Condemnees' property located at 1206 South Market Street in Mechanicsburg, Cumberland County for its planned Mariner East 2 pipeline.[4] On March 24, 2016, Condemnees filed POs to Sunoco's Declaration, challenging the Declaration on a number of grounds. In lieu of an evidentiary hearing, the parties submitted a stipulated record, upon which common pleas issued its November 10, 2016 Order, overruling all of Condemnees' POs. This appeal followed.[5]

On appeal, Condemnees challenge common pleas' decision only as it relates to their eighth PO – whether the condemnation is for private enterprise and thus prohibited by the PRPA. Related to that issue is whether common pleas should have made a determination that the condemnation was in the public's interest.[6] Sunoco responds that it is a certificated public utility and therefore fits into an exception under the PRPA. Furthermore, it contends that the PUC has already

---

[4] For an in-depth discussion of the Mariner East 2 Project, *see Sunoco I*, 143 A.3d at 1008-10.

[5] In an eminent domain case disposed on preliminary objections, this Court is limited to determining if common pleas' necessary findings of fact are supported by competent evidence or if an error of law or an abuse of discretion was committed. *Stark v. Equitable Gas Co., LLC*, 116 A.3d 760, 765 n.8 (Pa. Cmwlth. 2015).

[6] Sunoco argues this issue is waived as it was not raised before common pleas. Because whether the Mariner East Project is for private enterprise and for the public's benefit are interrelated, we will consider them in tandem.

determined that the project is for the benefit of the public and that determination cannot be collaterally attacked in this proceeding.

Section 204(a) of the PRPA prohibits the use of eminent domain for private enterprise.[7] 26 Pa. C.S. § 204(a). The prohibition against condemnation for private enterprise is subject to a number of exceptions, however. Those exceptions are found in subsection (b) of Section 204, which provides, in pertinent part:

(b) Exception. --

Subsection (a) **does not apply** if any of the following apply:

\* \* \*

(2) The property is taken by, to the extent the party has the power of eminent domain, transferred or leased to any of the following:

(i) **A public utility** or railroad as defined in [Section 102 of the Public Utility Code (Code),] 66 Pa. C.S. § 102 (relating to definitions).

26 Pa. C.S. § 204(b) (emphasis added). The exception for public utilities is consistent with the definition of "condemnor," which is defined as "[a]ny of the following which is authorized by law to exercise the power of eminent domain,"

---

[7] Specifically, Section 204(a) provides:

Eminent domain for private business prohibited.

(a) Prohibition. --

Except as set forth in subsection (b), the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited.

26 Pa. C.S. § 204(a).

including "[a] public utility as defined in [the Code]." Section 202(3) of the PRPA, 26 Pa. C.S. § 202(3). The Code, in turn, defines "public utility" as:

> (1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:
>
> * * *
>
> (v) **Transporting or conveying natural or artificial gas**, crude oil, gasoline, or petroleum products, materials for refrigeration, or oxygen or nitrogen, or other fluid substance, **by pipeline** or conduit, for the public for compensation.

66 Pa. C.S. § 102 (emphasis added). Thus, to determine whether the PRPA applies to the condemnation in this case, we must determine whether Sunoco is a "public utility." We already concluded in *Sunoco I* that it is a "public utility," and because the stipulated record before common pleas is similar to the records developed in *Sunoco I* and the other related cases, we reach the same conclusion here.

Sunoco's regulation as a public utility began in 2002 when Sunoco acquired the assets of Sun Pipe Line Company (Sun) and Atlantic Pipeline Corporation (Atlantic), which were public utilities under the PUC's jurisdiction. Upon application by Sunoco, the PUC issued its first CPC, approving Sunoco to transport petroleum products and refined petroleum products as a public utility in Sun's and Atlantic's former service territories. At that time, the PUC found that the transfer of assets to Sunoco "provides an affirmative public benefit" and is "necessary or proper for the service, accommodation, convenience, or safety of the public, and that [Sunoco's] application is in the public interest and should be approved." (R.R. at 723a-24a.) Subsequently, Sunoco sought and obtained a number of other CPCs and orders from the PUC, specifically related to the Mariner East Project, including an Order dated July 24, 2014, in which the PUC reaffirmed

5

Sunoco's authority to transport petroleum products between Delmont, Westmoreland County, and Twin Oaks, Delaware County; an Order dated August 21, 2014, in which the PUC approved a tariff for Sunoco's west-to-east intrastate movement of propane from Mechanicsburg, Cumberland County, to Twin Oaks, Delaware County; an Order dated August 21, 2014, in which the PUC granted Sunoco a CPC authorizing it to provide intrastate transportation service of petroleum products in Washington County, which expanded the service territory in which Sunoco is authorized to provide its Mariner East service; an Order dated January 15, 2015, in which the PUC approved a tariff for Sunoco's west-to-east intrastate movement of propane, reflecting a new origin point of Houston, Washington County; and an Order dated March 26, 2015, in which the PUC approved a supplemental tariff for intrastate shipments from Delmont, Westmoreland County to Twin Oaks, Delaware County.

Sunoco's power of eminent domain as a public utility emanates from the Code and the Business Corporation Law of 1988 (BCL).[8] Under Section 1104 of the Code, 66 Pa. C.S. § 1104, in order to have the authority to exercise the power of eminent domain, a public utility must possess a CPC issued by the PUC pursuant to Section 1101 of the Code, 66 Pa. C.S. § 1101. Further, Section 1511(a)(2) of the BCL, 15 Pa. C.S. § 1511(a)(2), provides that "public utility corporations" may exercise the power of eminent domain to condemn property for the transportation of, *inter alia*, natural gas and petroleum products. Section 1103 of the BCL, 15 Pa. C.S. § 1103, defines public utility corporation as "[a]ny domestic or foreign corporation for profit that . . . is subject to regulation as a

_____

[8] 15 Pa. C.S. §§ 1101-9507.

public utility by the [PUC] or an officer or agency of the United States."[9] Sunoco qualifies as a public utility with the power of eminent domain under both the Code and BCL. *Sunoco I*, 143 A.3d at 1016. Thus, we conclude that PRPA does not bar Sunoco's Declaration for Condemnees' property.

Condemnees argue that the analysis should not end there, however. They contend that common pleas had to determine whether the project was for the public's benefit. In support of this argument, they argue there is currently sufficient capacity to serve Pennsylvanians, and because there is no need to expand service, this demonstrates the project is not "for the public." They also point to the amount of revenue that they project will be generated as evidence that Sunoco's project is solely for its own gain.[10]

Condemnees are correct that in order to exercise the power of eminent domain to take an individual's private property rights, the taking must be for the public's benefit. However, here, the PUC has already made that determination. As we explained in *Sunoco I*, in its July 24, 2014 Order, the PUC found that the intrastate pipeline service proposed by Sunoco would result in "numerous potential public benefits" by allowing Sunoco "to immediately address the need for

---

[9] The Federal Energy Regulatory Commission (FERC) is an agency of the United States that may regulate an entity as a public utility under this section. Sunoco is regulated by the PUC for the intrastate portion of its pipeline and by FERC for the interstate portion of its pipeline. *Sunoco I*, 143 A.3d at 1015.

[10] According to Condemnees, Sunoco stands to make $875,435 per day or approximately $319.5 million per year on the project. (Condemnees' Br. at 24-25.) To reach this number, they multiply the tariff rate of 3 cents per gallon by the pipeline's capacity of 275,000. However, instead of using **3 cents** ($0.031834 to be exact), Condemnees use **3 dollars** (or $3.1834 to be exact), which results in significantly overstated income. Using the correct figure ($0.031834) times 275,000 equals $8,754.35 per day or approximately $3 million per year in gross income. There is no evidence of what Sunoco's capital and operating expenses would be, which would offset these amounts.

7

uninterrupted deliveries of propane in Pennsylvania and to ensure that there is adequate pipeline capacity to meet peak demand for propane during the winter heating season." *Id.* at 1019. We further noted that the PUC's August 21, 2014 Order, which authorized the provision of intrastate petroleum and refined petroleum products pipeline transportation service in Washington County, stated that:

> [W]e believe that approval of this Application is **necessary and proper for the service, accommodation, and convenience of the public**. We believe granting Sunoco authority to commence intrastate transportation of propane in Washington County **will enhance delivery options** for the transport of natural gas and natural gas liquids in Pennsylvania. In the wake of the propane shortage experienced in 2014, Sunoco's proposed service will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, **ensuring that Pennsylvania's citizens enjoy access to propane heating fuel**. Additionally, the proposed service **will offer a safer and more economic transportation alternative** for shippers to existing rail and trucking services.

*Id.* (emphasis added).

"A CPC issued by PUC is prima facie evidence that PUC has determined that there is a public need for the proposed service and that the holder is clothed with the eminent domain power." *Id.* at 1018. If the PUC finds there is a **public need** for the project, it necessarily follows that the project also serves a **public purpose.**

In *Sunoco I*, we explained that courts of common pleas have jurisdiction to review whether a condemnor meets the BCL requirements but does not have jurisdiction to revisit the PUC adjudications. *Id.* Otherwise, "[t]he administrative system of this Commonwealth would be thrown into chaos if we were to hold that agency decisions, reviewable by law by the Commonwealth Court, are also

8

susceptible to collateral attack in equity in the numerous common pleas courts." *Id.* (quoting *Aitkenhead v. Borough of West View,* 442 A.2d 364, 367 n.5 (Pa. Cmwlth. 1982)).

In *Sunoco I*, we similarly found that the Eminent Domain Code,[11] which governs process and procedure in condemnation proceedings, does not permit a common pleas court to review the public need for a proposed service by a public utility that has been issued a CPC. *Id.* at 1019; *see also Fairview Water Co. v. Pa. Pub. Utility Comm'n*, 502 A.2d 162, 167 (Pa. 1985) ("Once there has been a determination by the PUC that the proposed service is necessary and proper, the issues of scope and validity and damages must be determined by a Court of Common Pleas exercising equity jurisdiction.") As explained by our Supreme Court, the Legislature did not intend for courts to weigh the various factors that go into granting a CPC. *Phila. Suburban Water Co. v. Pa. Pub. Utility Comm'n*, 229 A.2d 748, 754 (Pa. 1967).

Notably, Condemnees do not challenge the **specific** taking of their property for the easements. Instead, they seek to attack the Mariner East 2 pipeline project as a whole. As evidenced by its Orders and CPCs, the PUC has already expressly determined, on more than one occasion, that the proposed pipeline is for the public's benefit. *See* 66 Pa. C.S. § 1103(a) ("A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate **is necessary or proper for the service, accommodation, convenience, or safety of the public**.") (emphasis added). Thus, common pleas did not err in not engaging in a public use analysis. The mere fact that Sunoco as a private business entity stands to profit does not

---

[11] 26 Pa. C.S. §§ 101-1106.

9

transform the public nature of the pipeline. *See In re Legislative Route 62214, Section 1-A*, 229 A.2d 1, 3 (Pa. 1967) ("[A] taking does not 'lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited.'") (quoting *Belovsky v. Redev. Auth. of City of Phila.*, 54 A.2d 277, 283 (Pa. 1947)). Also, the mere existence of adequate service does not preclude additional service being authorized by the PUC. *Morgan Drive Away, Inc. v. Pa. Public Utility Comm'n*, 515 A.2d 1048, 1049 (Pa. Cmwlth. 1986).

Based upon the foregoing, we affirm the Order of common pleas.

_____

**RENÉE COHN JUBELIRER,** Judge

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

In Re: Condemnation By Sunoco          :
Pipeline L.P. of Permanent and          :
Temporary Rights of Way for the        :
Transportation of Ethane, Propane,     :
Liquid Petroleum Gas, and other        :
Petroleum Products in the Township     :
of Upper Allen, Cumberland County,     :
Pennsylvania over the Lands of         :
Patricia A. Perkins and Thomas V.      :
Perkins                                :
                                       :
Appeal of: Patricia and Thomas         :          No. 2030 C.D. 2016
Perkins                                :

# **O R D E R**

    **NOW**, June 29, 2017, the Order of the Court of Common Pleas of Cumberland County, in the above-captioned matter, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge
